## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 22-6648-GW-Ex | Date | February 2, 2024 |
|---|---|---|---|
| Title | *Ilya Kaminsky, et al. v. New York Life Insurance Company, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

PROCEEDINGS:     **IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS' MOTION FOR SANCTIONS BASED ON CONTEMPT AND SPOLIATION OF EVIDENCE [91]**

Attached hereto is the Court's Tentative Ruling on Defendants' Motion [91] set for hearing on February 5, 2024 at 8:30 a.m.

:

Initials of Preparer     JG

*__Ilya Kaminsky et al v. New York Life Ins. Co. et al__*; Case No. 2:22-cv-06648-GW-(Ex)
Tentative Ruling on Defendants' Motion for Sanctions Based on Contempt and Spoliation of
Evidence

## I.  Background

In this action, Ilya Kaminsky ("Kaminsky" or "Plaintiff") sues New York Life Insurance
Company ("New York Life"), Unum Group ("Unum"), the Paul Revere Life Insurance Company
("Paul Revere"),[1] Provident Life & Accident Insurance Company ("Provident"), Michael West,
Boris Grayfer, and Kelly Blomquist for: (1) breach of contract, (2) breach of covenant of good
faith and fair dealing, (3) intentional infliction of emotional distress, (4) violation of the Unfair
Competition Law, (5) negligent misrepresentation, and (6) negligence.  *See* First Amended
Complaint ("FAC"), ECF No. 72.  According to the FAC, Plaintiff is a licensed physical therapist
who purchased a long-term disability policy (the "Policy") from New York Life in 1994.  *See id.*
¶¶ 25-26.  The Policy provides that in the event Plaintiff were to become totally disabled due to
injury or sickness, Defendants would pay Plaintiff the amount of money needed to support his
business until death.  *Id.* ¶ 28.  Plaintiff alleges he made claims to Defendants for total disability
benefits under the Policy and that Defendants wrongfully denied those claims.  *See id.* ¶¶ 29-32.

Before the Court is New York Life, Unum, Paul Revere, and Provident's (collectively,
"Defendants") Motion for Sanctions Based on Contempt and Spoliation of Evidence ("Mot."),
ECF No. 91.  Defendants seek terminating sanctions or, in the alternative, that an adverse inference
instruction be given on certain issues pertaining to the nature of Plaintiff's work before and after
the onset of his disability.  Plaintiff filed an opposition ("Opp."), ECF No. 97, and Defendants
filed a reply ("Reply"), ECF No. 100.

### A.  Relevant Procedural Background

On September 8, 2023, Defendants moved to compel Plaintiff and Ilya Kaminsky D.C.[2] to

---

[1] Unum Group was formerly known as UnumProvident Corporation.  Plaintiff names both entities as
defendants.  Additionally, the Paul Revere Life Insurance Company was improperly sued under the name "Paul Revere
Corporation."

[2] Although Ilya Kaminsky D.C. is no longer a party to this action, the discovery requests served on it remain
at issue here because Magistrate Judge Eick determined that "Plaintiff has possession, custody or control over former

respond to interrogatories and requests for production ("RFPs") which sought information related to Plaintiff's work, abilities, and financial information. *See* ECF No. 47. In an order dated September 25, 2023, Magistrate Judge Charles F. Eick granted in part and denied in part Defendants' motion. *See* Order on Motion to Compel ("MTC Order"), ECF No. 53. Among other things, the MTC Order required Plaintiff to produce by October 16, 2023 financial documents (RFP 5), appointment listings (RFPs 9 and 10), Current Procedural Terminology ("CPT") billing codes (RFP 8), and the identification of employee witnesses (Interrogatory 1). On October 26, 2023, Defendants filed an ex parte application for sanctions with Judge Eick based on Plaintiff's failure to comply with the MTC Order. *See* ECF No. 62. Judge Eick denied that request without prejudice, noting that the relief requested was more properly addressed to this Court. *See* ECF No. 63. Defendants then filed their ex parte request with this Court, which was also denied on the grounds that they had not justified their request for emergency relief, particularly in light of a likely extension of the discovery period. *See* ECF No. 68.[3]

On November 17, 2023, Defendants filed a fully noticed motion with Judge Eick seeking sanctions against Plaintiff for his failure to comply with the MTC Order. *See* ECF No. 74. In a minute order date December 4, 2023 ("Sanctions Order"), Judge Eick – noting "the urgent need to complete discovery by the discover cut-off" – ordered Plaintiff to "comply fully and immediately" with the MTC Order, including by removing "any remaining redactions from the documents produced." ECF No. 89 at 1-2. Judge Eick denied Defendants' request for evidentiary sanctions without prejudice, reiterating that such request was more properly addressed to this Court and finding that "[o]n the present record, with discovery still incomplete, the applicable factors do not yet weigh, on balance, in favor of evidentiary sanctions that could be tantamount to terminating sanctions." *Id.* at 3. In particular, Judge Eick noted that "the severity of any risk of prejudice to Defendants resulting from Plaintiff's discovery failures presently remains uncertain." *Id.* Judge Eick cautioned Plaintiff, however, "that any failure to comply fully and timely with this Minute Order, and the continued failure to comply belatedly with the September 25, 2023 Minute Order, may result in the imposition of drastic sanctions, including without limitation, the dismissal of this

---

Plaintiff Ilya Kaminsky, D.C.'s responsive documents and information." ECF No. 89.

[3] The discovery cutoff was later continued from November 9, 2023 to December 21, 2023. *See* ECF No. 81.

action." *Id.*

The discovery period ended on December 21, 2023.  Defendants filed the instant motion on January 8, 2024, asserting Plaintiff's continued noncompliance with the prior discovery orders. In addition, they claim Plaintiff destroyed certain appointment documents he was ordered to produce.

## II.  Legal Standard

Federal Rule of Civil Procedure 37 permits sanctions against a party who "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).  Those sanctions may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.*  Dismissal and default judgment are warranted only in "extreme circumstances." *Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, 332 F. App'x 387, 389 (9th Cir. 2009) (citing *Wyle v. R.J. Reynolds Indus., Inc.,* 709 F.2d 585, 589, 591 (9th Cir.1983)).

Moreover, a district court "has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct."  *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).  A court must exercise this authority with "restraint and discretion" and "fashion an appropriate sanction for conduct which abuses the judicial process," which could range from an assessment of attorney's fees to outright dismissal of a lawsuit.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).  "The party alleging discovery misconduct has the burden to prove by a preponderance of the evidence that the misconduct occurred."  *Miller v. White*, No. CV 14-7543-GW-(KKx), 2020 WL 636905, at *3 (Feb. 11, 2020) (quotation omitted).

This  inherent  authority  includes  the  ability  to  impose  sanctions  for  spoliation  of

3

evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Most courts use a three-part test to determine whether spoliation occurred, consisting of the following elements: "'(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind;" and (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012) (citation omitted). "[T]he 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (cleaned up); *see Miranda v. Wyatt*, 677 F. App'x 432, 432-33 (9th Cir. 2017) (citing *Residential Funding* with approval and noting the parties' agreement that it "provides an appropriate test for determining when an adverse inference instruction can be given"); *Katzman v. L.A. Cnty. Metro. Transp. Auth.*, No. 13-cv-00438-LHK, 2015 WL 13861765, at *9-10 (N.D. Cal. Mar. 26, 2015) (applying the *Residential Funding* test).

If spoliation is found, courts often consider three factors to determine whether and what type of sanctions to issue: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Medina v. Boeing Co.*, No. 8:20-cv-00304-JVS-JEM, 2022 WL 599021, at *2 (C.D. Cal. Jan. 27, 2022) (citation omitted).

### III. <u>Discussion</u>

The Court begins by considering whether, and the extent to which, Plaintiff has failed to comply with Judge Eick's discovery orders and/or spoliated responsive evidence. The Court notes at the outset that Plaintiff's opposition by and large does not contest Defendant's charges to that effect. Nor does Plaintiff provide any real justification for his non-production. Instead, Plaintiff spends a great deal of time arguing that Defendants failed to comply with the procedural requirements of Local Rule 7-3 and Local Rule 37-1. The Court disagrees on both points and is satisfied that Defendants' meet and confer efforts comply with Local Rule 7-3, as well as Local Rule 37-1 (to the extent it applies). Plaintiff also reiterates arguments regarding the relevance and

necessity of the requested discovery, but those are not sufficient justifications for noncompliance in light of two prior orders rejecting those or similar arguments.  Accordingly, the Court turns to the specific requests at issue.

As alluded to above, at issue are four categories of discovery requests: financial documents (RFP 5),[4] appointment listings (RFPs 9 and 10), CPT billing codes (RFP 8), and the identification of employee witnesses (Interrogatory 1).  Defendant has filed Plaintiff's responses to these requests, or examples thereof, under seal with the Court.

RFP 5 request documents pertaining to renumeration given to Plaintiff from 2017 through the present, including "[i]ncome derived from self-employment activities, whether as a proprietor, partner, or in any other capacity."  On October 23, 2023, Plaintiff produced W-2s for the years 2017-2020.  Defendants complain, however, that Plaintiff has not provided any financial documents regarding Plaintiff's income as a "proprietor," and that the W-2s show only what salary Plaintiff chose to pay himself.  The Court agrees that Plaintiff's production does not fully comply with Defendants' request, and by extension, Judge Eick's orders.

RFPs 9 and 10 seek Plaintiff's appointment books from January 1, 2018 through the present, including dates of service and procedure performed, as well as other reservation books, patient sign-in records, and schedules.  Plaintiff produced various appointment books but, based on the examples Defendants submitted under seal, the books were redacted in their entirety such that they provided no useful information whatsoever.  Plaintiff states in his opposition that he produced "schedules redacted only for patients' names as required by HIPAA," Opp. at 4, but Defendants' submissions indicate otherwise (and Plaintiff has provided no evidence of his own supporting his contention).  And even granting that the redactions were made for privacy purposes, Judge Eick ordered Plaintiff to remove "any remaining redactions from the documents produced," noting that the stipulated protective order sufficiently safeguarded these privacy interests. Sanctions Order at 2.

Furthermore, Plaintiff admitted at his deposition that he has seen patients beginning in

---

[4] In a chart submitted by Defendants summarizing the terms of the MTC Order and Plaintiff's productions following the Order, Defendants also reference RFP 1, which pertains to pension and retirement plan documents.  *See* ECF No. 91-3.  However, Defendants do not mention RFP 1 in either of their briefs, and so it is unclear whether they contend Plaintiff's production in response to that request was insufficient.

2022, that he receives appointment lists the night before his appointments, and that he throws away such lists at the end of the day.  *See* Declaration of Edith Sanchez Shea in Support of Sanctions Motion ("Shea Decl."), Ex. 5 at 249:11-24, ECF No. 91-7 at 8 of 10.  Plaintiff so testified in December 2023 – well after the discovery requests were served and the MTC Order was issued.  In his opposition, Plaintiff fails to contest that he spoliated evidence.  Instead, he argues that the appointment books were irrelevant and unnecessary in light of other discovery provided (including that Plaintiff sat for deposition twice).  *See* Opp. at 7.  Those arguments are nonstarters, as Judge Eick already twice ordered Plaintiff to produce the unredacted appointment lists.  Thus, with respect to RFPs 9 and 10, the Court would find that Plaintiff violated such orders and spoliated responsive evidence.

RFP 8 seeks "[c]omplete copies of all CPT codes for the work performed by Ilya Kaminsky for the period of August 1, 2018 through the present."  According to Defendants, such documents would demonstrate whether prior to the onset of his disability, Plaintiff spent his time treating patients or rather working in a managerial capacity, which is relevant to his disability claim.  In response to the request, Plaintiff produced only a generic list of physical therapy billing codes on October 23, 2023, with no indication as to which codes were used by Plaintiff or when.  Moreover, during deposition, the vendor who handles the billing for Plaintiff's practice testified that she receives a spreadsheet containing CPT billing codes for each therapist at Plaintiff's practice.  *See* Shea Decl. Ex. 3 at 70:1-9, ECF No. 91-5 at 5 of 6.  Again, Plaintiff offers no explanation for this failure.

Finally, Interrogatory 1 seeks identification of each person who worked for Plaintiff "since January 1, 2017, to include the PERSON's first and last name, last known ADDRESS, job title or job description, and the dates of services, whether paid or unpaid."  In response, on October 23, 2023, Plaintiff provided a list of approximately 150 names with no indication of their address, position, or dates of employment.  On January 2, 2024 (after the discovery cutoff), Plaintiff supplemented his production with an additional list containing the hire date and position of approximately 80 employees, as well as a list of cities (but no specific addresses) apparently associated with each.  The Court agrees with Defendants that Plaintiff's production did not *fully* comply satisfy their discovery request.

In sum, the Court finds that Plaintiff has disobeyed two discovery orders and spoliated

evidence.  Plaintiff's failure to provide materials responsive to RFPs 8, 9, and 10 are the most egregious.  Plaintiff's responses to RFP 5 and Interrogatory 1, standing alone, might not be enough to warrant the requested sanctions; however, taken alongside the other noncompliance discussed herein, they provided further basis for the issuance of sanctions.

The Court thus turns to what the appropriate measure of sanctions should be.  Terminating sanctions could conceivably be warranted in this case given Plaintiff's "long and unjustified delays in responding to discovery requests and noncompliance with judicial orders." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1385 (9th Cir. 1988).  Such noncompliance is "relevant to the considerations of expeditious resolution of litigation, docket management, and prejudice."  *Id.* Indeed, Judge Eick specifically warned that further noncompliance "may result in the imposition of drastic sanctions, including without limitation, the dismissal of this action."  Sanctions Order at 2.  Plaintiff's noncompliance continued despite this explicit warning, and Plaintiff offers little-to-no explanation in opposition to this motion – thereby demonstrating willfulness. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) ("[D]isobedient conduct not shown to be outside the control of the litigant is all that is required to demonstrate willfulness, bad faith, or fault." (internal quotation marks and citation omitted)); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (consideration of whether the non-compliant party had been warned of the consequences of noncompliance is relevant).[5]

Nevertheless, the Court declines to issue terminating sanctions given the availability of *potentially* less drastic measures – specifically, the requested adverse inference instructions. Defendants request the following the following instructions:

> (1) that the majority of Dr. Kaminsky's pre-disability work was managerial, and did not involve patient visits;
>
> (2) that Dr. Kaminsky's involvement with patient visits was in a purely supervisory role, consulting with other physical therapists on initial evaluations and plans of care; and
>
> (3) that Kaminsky returned to work half-time as of January 1, 2022, working remotely in a supervisory role, consulting with other physical therapists on patients' initial evaluations and plans of care.

---

[5] For the same reason, Defendants have established that Plaintiff acted with the "culpable state of mind" necessary for a finding of spoliation.  *Apple*, 881 F. Supp. 2d at 1138.

Mot. at 7.

To the extent these instructions would be tantamount to a total defeat of Plaintiff's case, the same factors of expeditious resolution of litigation, docket management, prejudice, and the public policy favoring disposition of the case on its merits are relevant. *See U.S. for Use & Ben. of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600, 603 n.6 (9th Cir. 1988). Again, Plaintiff's repeated noncompliance (despite being warned of the consequence of continued noncompliance) is significant: It frustrates the expeditious resolution of this litigation and the Court's ability to control its docket, and while public policy favors disposition of the case on its merits, a fair disposition is made difficult without Defendants possessing relevant discovery. Indeed, Defendants have been prejudiced because they have repeatedly sought such information during the discovery period (which has now passed) and are left to prepare for trial without it. Finally, taking even less drastic measures, such as *another* Court order, would be futile in obtaining Plaintiff's compliance.[6]

The requested instructions are also fairly tied to Plaintiff's misconduct. *See* Fed. R. Civ. P. 37(b)(2)(A) (authorizing the Court to direct "that the matters embraced in the order or other designated facts be taken as established for purposes of the action"); *Apple*, 881 F. Supp. 2d at 989-90 (courts consider whether a reasonable trier of fact could find that the spoliated evidence would support a claim or defense). In requesting Plaintiff's financial documents, appointment books, and billing codes, Defendants sought to learn of the nature of the work Plaintiff performed before and after the onset of his disability. Those facts are undoubtedly important to the extent of Plaintiff's entitlement to disability payments. Plaintiff's refusal to produce evidence related to those issue fairly supports the inference that such evidence would hurtful to his case – *i.e.*, that the majority of his pre-disability work was managerial, that his involvement with patient visits was in a purely supervisory role, and that he returned to work half-time as of January 1, 2022. Plaintiff has not provided any evidence to rebut these inferences on this motion. Accordingly, the Court would grant Defendants' request for the issuance of the requested instructions.

## VI. <u>Conclusion</u>

---

[6] These same considerations are pertinent to Defendants' request based on spoliation. *See Apple*, 888 F. Supp. 2 at 992.

Based on the foregoing discussion, the Court would **GRANT** Defendants' motion for adverse inference sanctions.